# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MELISSA ROBINSON, as Next Friend of
ADRIAN DUZAN, a minor,

               Plaintiff,

vs.

UNITED STATES OF AMERICA

               Defendants.

Case No. 18- 1390

Hon.

---

JOHN R. LaPARL, JR. (P39549)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645Griswold Street, Suite 4200
Detroit, Michigan 48226
(313) 961-4400

---

## PLAINTIFF'S COMPLAINT, AFFIDAVITS OF MERIT, AND DEMAND FOR JURY TRIAL

There is a civil action pending in the Circuit Court for the County of
Kent, State of Michigan, arising
out of the transaction or occurrence alleged in the Complaint.

NOW COMES Plaintiff, Melissa Robinson, as Next Friend of Adrian Duzan, a minor, by

and through counsel, McKeen & Associates, P.C., and for the Complaint and Affidavits of Merit,

hereby states the following:

(313) 961-4400    Detroit, MI 48226    645 Griswold Street, Suite 4200    McKeen & Associates, P.C.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this claim pursuant to 28 USC 1346 because the United States is a Defendant.

2.      The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding costs, interest and attorney fees and is otherwise within the jurisdiction of this Court.

3.      Venue is proper because Clinica Satna Maria is a federally funded clinic located in Grand Rapids, Michigan, and the physicians and nurses who cared for Melissa Robinson and Adrian Duzan were employees agents, or servants of Clinica Santa Maria at all relevant times.

4.      A Notice of Claim for Damage, Injury and Death was submitted.

5.      On July 12, 2018, the Department of Health & Human Services responded to said Notice by denying Plaintiff's tort claim.

## PARTIES

6.      Melissa Robinson was at all times relevant hereto a resident of the County of Kent, State of Michigan.

7.      Clinica Santa Maria was at all times relevant hereto a federally funded clinic, conducting business in the County of Kent, State of Michigan.

8.      Kirsten L. Anderson, M.D. was at all times relevant hereto a licensed and practicing physician, specializing in Obstetrics and Gynecology, conducting business at Clinica Santa Maria in the County of Kent, State of Michigan

9.      Trisha Zylstra, M.D. was at all times relevant hereto a licensed and practicing physician, specializing in Obstetrics and Gynecology, conducting business at Clinica Santa Maria in the County of Kent, State of Michigan.

10.     At all relevant times hereto, the nurses involved in the care of Melissa Robinson and/or Adrian Duzan were conducting business at Clinica Santa Maria in the County of Kent, State of Michigan.

McKeen & Associates, P.C.   645 Griswold Street, Suite 4200   Detroit, MI 48226   (313) 961-4400

## FACTUAL ALLEGATIONS

11.     Melissa Joy Robinson's prenatal care for the subject pregnancy was at Clinica Santa Maria.

12.     Ms. Robinson was 27 years old during the subject pregnancy.

13.     This was her second pregnancy and her estimated date of confinement was February 14, 2014.

14.     Ms. Robinson had several risk factors that were identified early in this pregnancy, including, but not limited to, prior fetal demise at 27 weeks, type 2 diabetes mellitus, chronic hypertension, preeclampsia, and obesity.

15.     On or about December 22+, 2013, Ms. Robinson presented for a prenatal visit.

16.     At this visit, an ultrasound, non-stress test (NST) and a biophysical profile (BPP) were performed.

17.     The NST was nonreactive and the BPP was given an abnormal score of 6 out of 8 points.

18.     The ultrasound showed an abnormal amniotic fluid index (AFI) of 27 cm.

19.     On or about December 24, 2013, Ms. Robinson presented for her next prenatal visit.

20.     An ultrasound, BPP and NST were performed.

21.     The NST was non-reactive.

22.     In addition, Ms. Robinson's blood pressures were abnormally high.

23.     On or about December 26, 2013, Ms. Robinson presented to St. Mary's Hospital in Grand Rapids, MI

24.     Ms. Robinson was triaged at or around 1415.

25.     In triage, an ultrasound was done which revealed a BPP of 4/8 and an abnormal AFI of 18.9 cm.

(313) 961-4400     Detroit, MI 48226     645 Griswold Street, Suite 4200     McKeen & Associates, P.C.

26. The fetal monitor strips (FMS) showed minimal variability and a tachycardic baseline.

27. At or about 1800, the FMS revealed the first of multiple prolonged variable and late decelerations coupled with minimal variability.

28. At or about 2100, contractions started to occur.

29. Ms. Robinson's cervix was still closed at this time.

30. Despite the concerning FMS, Ms. Robinson was allowed to labor for hours without changing the delivery plan.

31. At or about 0200 on December 27, 2013, physicians were notified of prolonged decelerations, variable decelerations, and concerning FMS.

32. Physicians were updated numerous times including, but not limited to, 2200, 2300, 0015, 0045, 0155, 0207, 0313, 0334, and 0343 about non-reassuring FMS.

33. The nurses caring for Ms. Robinson and her unborn child failed to institute chain of command to protect their patients.

34. At or about 0410, a decision was finally made to proceed with a Cesarean section.

35. Failing to see the urgency, Ms. Robinson was not taken to the OR until 0430 and did not deliver Adrian until around 0536.

36. Adrian was delivered by Cesarean section and vacuum delivery. The vacuum was applied for one pull.

37. At birth, Adrian was blue, not crying, limp, tachycardic, and not breathing.

38. Adrian's Apgar scores were 2 at one minute of life and 7 at five minutes of life.

39. He was depressed at birth with an acidotic cord gas (pH of 6.94 and a base excess of -13.4).

40. Adrian developed seizures within the first few weeks of life.

41. Neuroimaging revealed an intraventricular bleed.

(313) 961-4400     Detroit, MI 48226     645 Griswold Street, Suite 4200     McKeen & Associates, P.C.

42.     Adrian was diagnosed with cerebral palsy around 6 months of age.

43.     He continues to have multiple gross motor deficits and developmental delays.

## COUNT I: MEDICAL NEGLIGENCE OF KIRSTEN L. ANDERSON, M.D.

44.     Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

45.     Kirsten L. Anderson, M.D., when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to timely and properly:

a.  Perform and appreciate a thorough history and physical examination and reevaluate the patients' conditions at regular and proper intervals;

b.  Properly interpret all prenatal diagnostic testing and plan for earlier delivery when appropriate;

c.  Recognize and respond to any signs of fetal intolerance of labor and/or fetal distress;

d.  Admit Melissa to the hospital;

e.  Advise Melissa that a C-section was needed to deliver her baby and preserve fetal well-being;

f.  If Melissa Robinson did not consent to have a C-section done at that time, then carefully monitor the status of the baby, and once monitoring showed tachycardia, minimal variability, and intolerance to even minimal contractions, recommend a C-section delivery.

g.  Uphold Clinica Santa Maria's Patient Bill of Rights and ensure that proper care was administered;

h.  Any and all acts of negligence as identified through additional discovery.

46.     Kirsten L. Anderson, M.D. did none of these things, and such omissions constitute professional negligence for which Defendant is liable.

(313) 961-4400     Detroit, MI 48226     645 Griswold Street, Suite 4200     McKeen & Associates, P.C.

- 5 -

47.     At all times relevant hereto, Kirsten L. Anderson, M.D. was an employee, agent, or servant of Defendant; therefore, Defendant is vicariously liable for the negligence of Kirsten L. Anderson, MD.

48.     Defendant is liable to Plaintiff under principles of Respondeat Superior and actual agency because Kirsten L. Anderson, M.D. was an employee, agent or servant of Clinica Santa Maria, a federally funded clinic, at all relevant times hereto.

49.     As a direct and proximate result of the violations of the applicable standard of practice or care, Adrian Duzan experienced prolonged hypoxia which resulted in a profound hypoxic-ischemic injury and cerebral palsy. This was evident upon eventual delivery when he was noted to have very poor Apgar scores, acidotic cord blood gases, decreased tone, severe hypoxic-ischemic brain injury, and intraventricular bleed on neuroradiology films. Within a reasonable degree of medical certainty, the above-mentioned violations of the standard of care caused Adrian Duzan's hypoxic-ischemic injury and sequelae.

50.     As a consequence of the negligence, Plaintiff further claims all elements of damages permitted under applicable statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendant in whatever amount above Seventy-Five Thousand [$75,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under the law.

## COUNT II: MEDICAL NEGLIGENCE OF TRISHA ZYLSTRA, M.D.

51.     Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

(313) 961-4400    Detroit, MI 48226    645 Griswold Street, Suite 4200    McKeen & Associates, P.C.

52. Trisha Zylstra, M.D., when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to timely and properly:

    a. Perform and appreciate a thorough history and physical examination and reevaluate the patients' conditions at regular and proper intervals;

    b. Properly interpret all prenatal diagnostic testing and plan for earlier delivery when appropriate;

    c. Recognize and respond to any signs of fetal intolerance of labor and/or fetal distress,

    d. Admit Melissa Robinson to the hospital for monitoring and the administration of MgSO4 for neuroprotection and betamethasone for lung maturity;

    e. Order a 24-hour urine;

    f. Uphold Clinica Santa Maria's Patient Bill of Rights and ensure that proper care was administered;

    g. Any and all acts of negligence as identified through additional discovery.

53. Trisha Zylstra, M.D. did none of these things, and such omissions constitute professional negligence for which Defendant is liable.

54. At all times relevant hereto, Trisha Zylstra, M.D. was an employee, agent, or servant of Defendant; therefore, Defendant is vicariously liable for the negligence of Trisha Zylstra, M.D.

55. Defendant is liable to Plaintiff under principles of Respondeat Superior and actual agency because Trisha Zylstra, M.D. was an employee, agent or servant of Clinica Santa Maria, a federally funded clinic, at all relevant times hereto.

56. As a direct and proximate result of the violations of the applicable standard of practice or care, Adrian Duzan experienced prolonged hypoxia which resulted in a profound hypoxic-ischemic injury and cerebral palsy. This was evident upon eventual delivery when he was noted to have very poor Apgar scores, acidotic cord blood gases, decreased tone, severe hypoxic-

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

ischemic brain injury, and intraventricular bleed on neuroradiology films. Within a reasonable degree of medical certainty, the above-mentioned violations of the standard of care caused Adrian Duzan's hypoxic-ischemic injury and sequelae.

57. As a consequence of the negligence, Plaintiff further claims all elements of damages permitted under applicable statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Seventy-Five Thousand [$75,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under the law.

## COUNT III: MEDICAL NEGLIGENCE OF HEATHER ROMERO, M.D.

58. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

59. Heather Romero, M.D., when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to timely and properly:

    a.   Perform and appreciate a thorough history and physical examination and reevaluate the patients' conditions at regular and proper intervals;

    b.   Educate and supervise residents and nurses providing care and/or treatment to Melissa Robinson and Adrian Duzan;

    c.   Properly interpret all prenatal diagnostic testing and plan for delivery;

    d.   Consult with obstetrical specialist and ensure that a proper care plan was in place,

    e.   Personally examine Melissa and evaluate the status of the baby;

    f.   Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and variability,

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

g. Perform a review of the monitor strips and assess the adequacy of Melissa's uterine contractions at regular and proper intervals;

h. Recognize and respond to any signs of fetal intolerance of labor and/or fetal distress,

i. Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

j. Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Melissa in the left lateral position, administering oxygen, and administering intravenous fluids in a timely manner;

k. Ensure that Melissa was informed that a C-section was needed to deliver her baby and preserve fetal well-being on December 26, 2013 when she presented to Mercy Healthcare/St. Mary's Hospital and thereafter;

l. Advocate that a C-section was done without delay. without delay;

m. Uphold Trinity Health-Michigan's Patient Bill of Rights and ensure that proper care was administered;

n. Any and all acts of negligence as identified through additional discovery.

60.    Heather Romero, M.D. did none of these things, and such omissions constitute professional negligence for which she is directly liable

61.    At all times relevant hereto, Heather Romero, M.D. was an employee, agent, or servant of Clinica Santa Maria; therefore, Defendant is vicariously liable for the negligence of Heather Romero, M.D.

62.    As a direct and proximate result of the violations of the applicable standard of practice or care, Adrian Duzan experienced prolonged hypoxia which resulted in a profound hypoxic-ischemic injury and cerebral palsy. This was evident upon eventual delivery when he was noted to have very poor Apgar scores, acidotic cord blood gases, decreased tone, severe hypoxic-ischemic brain injury, and intraventricular bleed on neuroradiology films. Within a reasonable

McKeen & Associates, P.C.   645 Griswold Street, Suite 4200   Detroit, MI 48226   (313) 961-4400

- 9 -

degree of medical certainty, the above-mentioned violations of the standard of care caused Adrian Duzan's hypoxic-ischemic injury and sequelae.

63.    As a consequence of the negligence, Plaintiff further claims all elements of damages permitted under applicable statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Seventy-Five Thousand [$75,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under the law.

## COUNT IV: MEDICAL NEGLIGENCE OF NURSES INVOLVED IN THE CARE OF MELISSA ROBINSON AND/OR ADRIAN DUZAN

64.    Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

65.    At all relevant times hereto, the nurses involved in the care of Melissa Robinson and/or Adrian Duzan at Clinica Santa Maria, when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to timely and properly:

    a.  Perform and appreciate a complete history and physical assessment and reevaluate the patient's condition at regular and proper intervals;

    b.  Advocate for Melissa's admission to the hospital on December 22, 2013 and December 24, 2013;

    c.  Consult with an appropriately trained physician regarding the patient's condition at regular and proper intervals, and utilize the chain of command to ensure that an appropriately trained physician personally evaluated Melissa's condition at regular and proper intervals;

    d.  Perform appropriate prenatal testing and report results to physicians in a timely manner;

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

e.  Closely monitor Melissa and Adrian and recognize any signs and/or symptoms concerning for fetal distress;

f.  Provide adequate and continuous monitoring of the fetal heart rate during labor and delivery to recognize, appreciate, and respond to the progression of and response to labor;

g.  Perform a review of the monitor strips and assess the adequacy of Melissa's uterine contractions at regular and proper intervals;

h.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and variability;

i.  Chart the patient's cervical dilatation and descent (station) on a labor graph throughout labor;

j.  Recognize and respond to any signs of fetal intolerance of labor and/or fetal distress, including, tachycardia, variable decelerations, late decelerations, repetitive decelerations, decreased variability, and/or increased baseline fetal heart rate, and take appropriate action by notifying an obstetrician;

k.  Seek reassurance of fetal well-being when the fetal heart monitoring patterns are showing signs of distress and/or intolerance of labor;

l.  Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Melissa in the left lateral position, administering oxygen, and administering intravenous fluids in a timely manner;

m.  Ensure that a C-section was performed when indicated;

n.  Ensure that Adrian was delivered in a manner that would avoid injury;

o.  Uphold Clinica Santa Maria Bill of Rights and ensure that proper care is administered;

p.  Any and all acts of negligence as identified through additional discovery.

66.  The nurses involved in the care of Melissa Robinson and Adrian Duzan at all relevant times hereto did none of these things, and such omissions constitute professional negligence for which Defendant is liable to Plaintiff.

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

67.     At all times relevant hereto, the nurses caring for Melissa Robinson and Adrian Duzan were employees, agents, or servants of Defendant; therefore, Defendant is vicariously liable

68.     Defendant is liable to Plaintiff under principles of Respondeat Superior and actual agency because the nurses who provided care and treatment to Melissa Robinson and Adrian Duzan at all times relevant hereto were employees, agents or servants of Clinica Santa Maria.

69.     As a direct and proximate result of the violations of the applicable standard of practice or care, Adrian Duzan experienced prolonged hypoxia which resulted in a profound hypoxic-ischemic injury and cerebral palsy.  This was evident upon eventual delivery when he was noted to have very poor Apgar scores, acidotic cord blood gases, decreased tone, severe hypoxic-ischemic brain injury, and intraventricular bleed on neuroradiology films. Within a reasonable degree of medical certainty, the above-mentioned violations of the standard of care caused Adrian Duzan's hypoxic-ischemic injury and sequelae.

70.     As a consequence of the negligence, Plaintiff further claims all elements of damages permitted under applicable statutory law and common aw, whether known now or whether becoming known during the pendency this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Seventy-Five Thousand [$75,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under the law.

## COUNT V: MEDICAL NEGLIGENCE OF CLINICA SANTA MARIA

71.     Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

72.     Clinica Santa Maria, through its agents, actual, and/or ostensible, servants, and/or employees, including, but not limited to, Kirsten L. Anderson, M.D., Trisha Zylstra, M.D., Heather

Romero, M.D., and any and all other doctors and nurses involved in the care of Melissa Robinson and/or Adrian Duzan at all times relevant hereto, when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and/or Adrian Duzan, had a duty to:

    a. Select, train and monitor its employees, servants, agents, or staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care;

    b. Provide qualified medical staff with the proper training and ability to meet Melissa Robinson and Adrian Duzan's needs, including, but not limited to, the ability to properly manage Melissa's obstetrical care in accordance with the standard of practice;

    c. Create, implement, formulate, and enforce protocols and/or procedures for monitoring of labor, and indications for delivery via C-section;

    d. Provide proper obstetric services, including, but not limited to, monitoring of labor, and delivery via C-section;

    e. Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Melissa Robinson and Adrian Duzan's needs were being met and that they were provided proper medical care in compliance with the standard of care;

    f. Any and all acts of negligence as identified through additional discovery.

73. Clinica Santa Maria did none of these things, and such omissions constitute professional negligence for which Defendant is liable to Plaintiff.

74. Defendant also is liable to Plaintiff under principles of Respondeat Superior and actual agency because Kirsten L. Anderson, M.D., Heather Romero, MD., Trisha Zylstra, M.D and the nurses who provided care and treatment to Melissa Robinson and Adrian Duzan at all times relevant hereto were employees, agents or servants of Clinica Santa Maria.

75. As a direct and proximate result of the violations of the applicable standard of practice or care, Adrian Duzan experienced prolonged hypoxia which resulted in a profound hypoxic-ischemic injury and cerebral palsy. This was evident upon eventual delivery when he was

McKeen & Associates, P.C.    645 Griswold Street, Suite 4200    Detroit, MI 48226    (313) 961-4400

noted to have very poor Apgar scores, acidotic cord blood gases, decreased tone, severe hypoxic-ischemic brain injury, and intraventricular bleed on neuroradiology films. Within a reasonable degree of medical certainty, the above-mentioned violations of the standard of care caused Adrian Duzan's hypoxic-ischemic injury.

76.     As a consequence of the negligence, Plaintiff further claims all elements of damages permitted under applicable statutory law and common aw, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Seventy-Five Thousand [$75,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney fees, as well as all other damages allowed under the law.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.

JOHN R. LaPARL, JR (P39549
MCKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
Phone: (313) 961-4400
Facsimile: (313) 961-5985
Email: jlaparl@mckeenassociates.com
Email: dburton@mckeenassociates.com

Dated: 12-14-18

- 14 -

## **AFFIDAVIT OF MERITORIOUS CLAIM OF DR. JAMES A, NICHOLSON**

COMMOMWEALTH OF PENNSYLVANIA          )
                                                                          )ss.
COUNTY OF DAUPHIN         )

I, Dr. James A. Nicholson, by this Affidavit, attest to the following:

1.        I am Board Certified in Family Medicine.

2.        During the year preceding the alleged malpractice in this action, I was specializing in and devoting a majority of my professional time to the clinical practice of Family Medicine

3.        I have read the Notice of Intent to File a Claim in this action.

4.        I have reviewed medical records which allow me to reach the opinions contained herein.

5.        Melissa Robinson was a 27-year-old Gravida 2, Para 0100, with an EDC of February 13, 2014, who presented to Clinica Santa Maria on December 22, 2013 and December 24, 2013.

6.        Melissa Robinson had the following risk factors that were identified early in this pregnancy prior fetal demise at 27 weeks, Type 2 diabetes mellitus, chronic hypertension, superimposed preeclampsia, and obesity.

7.        On December 22, 2013, Melissa Robinson had a nonstress test (NST) done which was non-reactive, with a BPP of 6/8, and an AFI of 27 indicating polyhydramnios.  The AFI was artificially elevated.  Melissa Robinson was sent home on that date.

8.        On December 24, 2013. Melissa Robinson had another NST done which was once again non-reactive, with a BPP of 8/8, and she had signs and symptoms of preeclampsia.  She was sent home with 24-hour urine collection.

9.     On or about December 26th, 2013, Melissa Robinson presented to Mercy Healthcare/St. Mary's Hospital.  Melissa presented to triage at or around 1415.  In triage, an ultrasound was done with a resulting BPP of 4/8 and an abnormal AFI of 18.9 cm.  The fetal monitor strips (FMS) showed minimal variability and a tachycardic baseline.

10.     Heather Romero, M.D., when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to timely and properly:

a.   Perform and appreciate a thorough history and physical examination and reevaluate the patients' conditions at regular and proper intervals;

b.   Educate and supervise residents and nurses providing care and/or treatment to Melissa Robinson and Adrian Duzan;

c.   Properly interpret all prenatal diagnostic testing and plan for delivery;

d.   Consult with obstetrical specialist and ensure that a proper care plan was in place,

e.   Personally examine Melissa and evaluate the status of the baby;

f.   Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and variability;

g.   Perform a review of the monitor strips and assess the adequacy of Melissa's uterine contractions at regular and proper intervals;

h.   Recognize and respond to any signs of fetal intolerance of labor and/or fetal distress,

i.   Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

j.   Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Melissa in the left lateral position, administering oxygen, and administering intravenous fluids in a timely manner;

  k. Ensure that Melissa was informed that a C-section was needed to deliver her baby and preserve fetal well-being on December 26, 2013 when she presented to Mercy Healthcare/St. Mary's Hospital and thereafter;

  l. Advocate that a C-section was done without delay. without delay;

  m. Uphold Trinity Health-Michigan's Patient Bill of Rights and ensure that proper care was administered;

  n. Any and all acts of negligence as identified through additional discovery.

  11. Clinica Santa Maria, through its actual and/or ostensible agents, servants, and/or employees, including, but not limited to, Heather Romero, and any and all other physicians involved in the care of Melissa Robinson and Adrian Duzan at Clinica Santa Maria when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan on December 22, 2013 and December 24, 2013, had a duty to:

  a. Select, train and monitor its employees, servants, agents, or staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care;

  b. Provide qualified medical staff with the proper training and ability to meet Melissa Robinson and Adrian Duzan's needs, including, but not limited to, the ability to properly manage Melissa's obstetrical care in accordance with the standard of practice;

  c. Create, implement, formulate, and enforce protocols and/or procedures for monitoring of prenatal care, labor, and indications for delivery via C-section;

  d. Provide proper obstetric services, including, but not limited to, monitoring of labor, instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Melissa in the left lateral position, administering oxygen, and administering intravenous fluids in a timely manner; and delivery via C-section;

  e. Ensure that Melissa Robinson and Adrian Duzan's needs were being met and that they were provided proper medical care in compliance with the standard of care as described herein;

  f. Any and all acts of negligence as identified through additional discovery.

12.     Trinity Health Michigan d/b/a Clinica Santa Maria and Mercy Healthcare/St. Mary's Hospital, through its actual and/or ostensible agents, servants, and/or employees, including, but not limited to, Heather Romero, M.D.., and any and all other physicians involved in the care of Melissa Robinson and Adrian Duzan at Mercy Healthcare/St. Mary's Hospital, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to:

    a.  Select, train and monitor its employees, servants, agents, and its staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care;

    b.  Provide qualified medical staff with the proper training and ability to meet Melissa Robinson and Adrian Duzan's needs, including, but not limited to, the ability to properly manage Melissa's obstetrical care, in accordance with the standard of practice;

    c.  Create, implement, formulate, and enforce protocols and/or procedures for monitoring labor and the indications for delivery via C-section,

    d.  Provide proper obstetric services, including, but not limited to, monitoring of labor and delivery via C-section;

    e.  Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Melissa Robinson and Adrian Duzan's needs were being met and that they were provided proper medical care in compliance with the standard of care;

    f.  Any and all acts of negligence as identified through additional discovery.

13.     Advantage Health/Saint Mary's Medical Group, through its actual and/or ostensible agents, servants, and/or employees, including, but not limited to, Heather Romero, M.D., had a duty to:

    a.  Select, train and monitor its employees, servants, agents, and its staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care;

    b.  Provide qualified medical staff with the proper training and ability to meet Melissa Robinson and Adrian Duzan's needs, including, but not limited to, the

ability to properly manage Melissa's obstetrical care, in accordance with the standard of practice;

   c.   Create, implement, formulate, and enforce protocols and/or procedures for monitoring labor and the indications for delivery via C-section,

   d.   Provide proper obstetric services, including, but not limited to, monitoring of labor and delivery via C-section;

   e.   Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Melissa Robinson and Adrian Duzan's needs were being met and that they were provided proper medical care in compliance with the standard of care;

   f.   Any and all acts of negligence as identified through additional discovery.

14.    It is my opinion, based upon the available information, as well as my training knowledge, education and experience in Family Medicine, that there was a failure to do those acts listed above, and such omissions constitute violations of the applicable standard of care.

15.    In order to have conformed to the standard of care, the above-named should have done those things listed in paragraphs 5 through 12, and the respective subsections above.

16.    As a direct and proximate result of the violations of the applicable standard of practice or care, Adrian Duzan experienced prolonged hypoxia which resulted in a profound hypoxic-ischemic injury and cerebral palsy. This was evident upon eventual delivery when he was noted to have very poor Apgar scores, acidotic cord blood gases, decreased tone, severe hypoxic-ischemic brain injury, and intraventricular bleed on neuroradiology films. Within a reasonable degree of medical certainty, the above-named health care providers' violations of the standard of care caused Adrian Duzan's hypoxic-ischemic injury.

17.    This opinion is based upon a review of the information to date and may or may not change upon review of additional materials.

_(signature)_

Dr. James A. Nicholson

Subscribed and sworn to before me on
this __12th__ day of __November__ , 2018

_(signature)_ [Name]
Notary Public __Dauphin__ [County]
My Commission Expires: __September 17, 2019__

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Sheryl A. Holder, Notary Public
Derry Twp., Dauphin County
My Commission Expires Sept. 17, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

1293346

Re:    Adrian Duzan, a minor

## AFFIDAVIT OF MERITORIOUS CLAIM OF DR. ROBERT DEIN

COMMOMWEALTH OF PENNSYLVANIA          )
                                                                            )ss.
COUNTY OF MONTGOMERY          )

I, Dr. Robert Dein, by this Affidavit, attest to the following:

1.     I am Board Certified in Obstetrics and Gynecology.

2.     During the year preceding the alleged malpractice in this action, I was specializing in and devoting a majority of my professional time to the clinical practice of Obstetrics and Gynecology,

3.     I have read the Notice of Intent to File a Claim in this action.

4.     I have reviewed medical records which allow me to reach the opinions contained herein.

5.     Melissa Robinson was a 27-year-old Gravida 2, Para 0100, with an EDC of February 13, 2014, who presented to Clinica Santa Maria on December 22, 2013 and December 24, 2013.

6.     Melissa Robinson had the following risk factors that were identified early in this pregnancy: prior fetal demise at 27 weeks, Type 2 diabetes mellitus, chronic hypertension, superimposed preeclampsia, and obesity.

7.     On December 20, 2013, Melissa Robinson had a nonstress test (NST) done which was non-reactive, with a BPP of 6/8, and an AFI of 27 indicating polyhydramnios.  The AFI was artificially elevated due to her diabetes.  Melissa Robinson was sent home on that date.

8.     On December 24, 2013. Melissa Robinson had another non NST done which was once again non-reactive, with a BPP of 8/8, and she had signs and symptoms of superimposed preeclampsia.  She was sent home with 24-hour urine collection.

9.     Trisha Zylstra, M.D., when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian, had a duty to timely and properly:

   a. Perform and appreciate a thorough history and physical examination and reevaluate the patients' conditions at regular and proper intervals;

   b. Properly interpret all prenatal diagnostic testing and plan for earlier delivery when appropriate;

   c. Recognize and respond to any signs of fetal intolerance of labor and/or fetal distress,

   d. Admit Melissa Robinson to the hospital for monitoring and the administration of MgSO4 for neuroprotection and betamethasone for lung maturity,

   e. Order a 24-hour urine test,

   f. Uphold Clinica Santa Maria's Patient Bill of Rights and ensure that proper care was administered,

   g. Any and all acts of negligence as identified through additional discovery.

10.     Kristen L. Anderson, M.D., when presented with patients exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to timely and properly:

   a. Perform and appreciate a thorough history and physical examination and reevaluate the patients' conditions at regular and proper intervals;

   b. Properly interpret all prenatal diagnostic testing and plan for earlier delivery when appropriate;

   c. Recognize and respond to any signs of fetal intolerance of labor and/or fetal distress,

    d.   Admit Melissa to the hospital,

    e.   Advise Melissa that a C-section was needed to deliver her baby and preserve fetal well-being;

    f.   If Melissa Robinson did not consent to have a C-section done at that time, then carefully monitor the status of the baby, and once monitoring showed tachycardia, minimal variability, and intolerance to even minimal contractions, recommend a C-section delivery.

    g.   Uphold Clinica Santa Maria's Patient Bill of Rights and ensure that proper care was administered

    h.   Any and all acts of negligence as identified through additional discovery.

11.    Clinica Santa Maria, through its actual and/or ostensible agents, servants, and/or employees, including, but not limited to, Kirsten L. Anderson, M.D. and Trisha Zylstra, M.D., and any and all other physicians involved in the care of Melissa Robinson and Adrian Duzan, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to:

    a.   Select, train and monitor its employees, servants, agents, or staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care;

    b.   Provide qualified medical staff with the proper training and ability to meet Melissa Robinson and Adrian Duzan's needs, including, but not limited to, the ability to properly manage Melissa's obstetrical care in accordance with the standard of practice;

    c.   Create, implement, formulate, and enforce protocols and/or procedures for monitoring of prenatal care, labor, and indications for delivery via C-section;

    d.   Provide proper obstetric services, including, but not limited to, monitoring of labor, instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Melissa in the left lateral position, administering oxygen, and administering intravenous fluids in a timely manner;   and delivery via C-section;

    e.   Ensure that Melissa Robinson and Adrian Duzan's needs were being met and that they were provided proper medical care in compliance with the standard of care as described herein;

f.   Any and all acts of negligence as identified through additional discovery.

12.   It is my opinion, based upon the available information, as well as my training knowledge, education and experience in Obstetrics and Gynecology, that there was a failure to do those acts listed above, and such omissions constitute violations of the applicable standard of care.

13.   In order to have conformed to the standard of care, the above-named should have done those things listed in paragraphs 9 through 11, and the respective subsections above.

14.   As a direct and proximate result of the violations of the applicable standard of practice or care identified herein, Adrian Duzan experienced prolonged hypoxia which resulted in a profound hypoxic-ischemic injury and cerebral palsy.  This was evident upon eventual delivery when he was noted to have very poor Apgar scores, acidotic cord blood gases, decreased tone, severe hypoxic-ischemic brain injury, and intraventricular bleed on neuroradiology films.  Within a reasonable degree of medical certainty, the above-named health care providers' violations of the standard of care caused Adrian Duzan's hypoxic-ischemic injury.

15.   This opinion is based upon a review of the information to date and may or may not change upon review of additional materials.

_____
Dr. Robert Dein

Subscribed and sworn to before me on
this 10th day of October , 2018

_____ [Name] Cynthia Yovanov
Notary Public / Delaware County [County]
My Commission Expires: 8/23/22

Commonwealth of Pennsylvania - Notary Seal
CYNTHIA YOVANOV - Notary Public
Delaware County
My Commission Expires Aug 23, 2022
Commission Number 1339706

Re:    **Adrian Duzan, a minor**

## AFFIDAVIT OF MERITORIOUS CLAIM OF HEIDI SHINN, R.N. B.S.N., R.N. C.

STATE OF OHIO        )
                           )ss.
COUNTY OF DELAWARE )

     I, Heidi Shinn, R.N., B.S.N., R.N.C., by this Affidavit, attest to the following:

     1.     I am a licensed Registered Nurse.

     2.     During the year preceding the alleged malpractice in this action, I was specializing in and devoting a majority of my professional time to the clinical practice and teaching of Obstetrical Nursing.

     3.     I have read the Notice of Intent to File a Claim in this action.

     4.     I have reviewed medical records which allow me to reach the opinions contained herein.

     5.     Melissa Robinson was a 27-year-old Gravida 2, Para 0100, with an EDC of February 13, 2014, who presented to Clinica Santa Maria on December 22, 2013 and December 24, 2013.

     6.     Melissa Robinson had the following risk factors that were identified early in this pregnancy: prior fetal demise at 27 weeks, Type 2 diabetes mellitus, chronic hypertension, superimposed preeclampsia, and obesity.

     7.     On December 22, 2013, Melissa Robinson had a nonstress test (NST) done which was non-reactive, with a BPP of 6/8, and an AFI of 27 indicating polyhydramnios.  The AFI was artificially elevated due to her diabetes.  Melissa Robinson was sent home on that date.

8.    On December 24, 2013, Melissa Robinson had another non NST done which was once again non-reactive, with a BPP of 8/8, and she had signs and symptoms of superimposed preeclampsia.  She was sent home with 24-hour urine collection.

9.    On or about December 26th, 2013, Melissa Robinson presented to St. Mary's Healthcare to return a 24-hour urine sample and to report that she was feeling decreased fetal movement.  Melissa presented to triage at or around 1415.  In triage, an ultrasound was done with resulting BPP of 4/8 and an abnormal AFI of 18.9 cm.  The fetal monitor strips showed minimal variability and a tachycardic baseline.

10.    That any and all nurses when presented with patients such as Melissa Robinson and Adrian Duzan , owed a duty to timely and properly:

   a.   Perform and appreciate a complete history and physical assessment and reevaluate the patient's condition at regular and proper intervals;

   b.   Advocate for Melissa's admission to the hospital on December 22, 2013 and December 24, 2013;

   c.   Consult with an appropriately trained physician regarding the patient's condition at regular and proper intervals, and utilize the chain of command to ensure that an appropriately trained physician personally evaluated Melissa's condition at regular and proper intervals;

   d.   Perform appropriate prenatal testing and report results to physicians in a timely manner;

   e.   Closely monitor Melissa and Adrian and recognize any signs and/or symptoms concerning for fetal distress;

   f.   Provide adequate and continuous monitoring of the fetal heart rate during labor and delivery to recognize, appreciate, and respond to the progression of and response to labor;

   g.   Perform a review of the monitor strips and assess the adequacy of Melissa's uterine contractions at regular and proper intervals;

   h.   Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and variability;

i.   Chart the patient's cervical dilatation and descent (station) on a labor graph throughout labor;

j.   Recognize and respond to any signs of fetal intolerance of labor and/or fetal distress, including, tachycardia, variable decelerations, late decelerations, repetitive decelerations, decreased variability, and/or increased baseline fetal heart rate, and take appropriate action by notifying an obstetrician;

k.   Seek reassurance of fetal well-being when the fetal heart monitoring patterns are showing signs of distress and/or intolerance of labor;

l.   Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Melissa in the left lateral position, administering oxygen, and administering intravenous fluids in a timely manner;

m.   Ensure that a C-section was performed when indicated;

n.   Ensure that Adrian was delivered in a manner that would avoid injury;

o.   Uphold Clinica Santa Maria and Trinity Health-Michigan's Patient Bill of Rights and ensure that proper care is administered;

p.   Any and all acts of negligence as identified through additional discovery.

11.    Clinica Santa Maria, through its actual and/or ostensible agents, servants, and/or employees, including, but not limited to, the nurses involved in the care of Melissa Robinson and Adrian Duzan at Clinica Santa Maria, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Melissa Robinson and Adrian Duzan, had a duty to:

a.   Select, train and monitor its employees, servants, agents, or staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care;

b.   Provide qualified medical staff with the proper training and ability to meet Melissa Robinson and Adrian Duzan's needs, including, but not limited to, the

ability to properly manage Melissa's obstetrical care, in accordance with the standard of practice;

c.   Create, implement, formulate, and enforce protocols and/or procedures for monitoring labor, and the indications for delivery via C-section,

d.   Provide proper obstetric services, including, but not limited to, monitoring of labor, and delivery via C-section;

e.   Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Melissa Robinson and Adrian Duzan's needs were being met and that they were provided proper medical care in compliance with the standard of care;

f.   Any and all acts of negligence as identified through additional discovery.

12.   It is my opinion, based upon the available information, as well as my training knowledge, education and experience in Obstetrical Nursing, that there was a failure to do those acts listed above, and such omissions constitute violations of the applicable standard of care.

13.   In order to have conformed to the standard of care, the above-named should have done those things listed in paragraphs 10 through 11, and the respective subsections above.

14.   This opinion is based upon a review of the information to date and may or may not change upon review of additional materials.


Heidi Shinn, R.N., B. S.N., R.N.C.


Subscribed and sworn to before me on
this _10_ day of _October_, 2018

Notary Public _Franklin_                    [Name]
                                            [County]
My Commission Expires: _September 12 2021_

HANNA DODS
Notary Public, State of
My Commission Ex.
September 12, 20